STATE OF MAINE
CUMBERLAND, SS.

THOMAS M. BROOKS )
)
Plaintiff, )
)
v. )
)
JOHN R. LEMIEUX, ESQ., and )
DESMOND & RAND, P.A., as *respondeat* )
*superior* for JOHN R. LEMIEUX, ESQ., )
)
Defendants. )

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CUMSC-CV-14-293

ORDER ON DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT

Before the court is Defendants' motion for summary judgment on Plaintiff's claims for

legal malpractice. A hearing on Defendants' motion was held on January 8, 2016. Based on the

following, Defendants' motion for summary judgment is granted.

## I.    BACKGROUND

Plaintiff Thomas M. Brooks has brought claims against John R. Lemieux, Esq. and his

law firm Desmond & Rand, P.A., as *respondeat superior* for Lemeiux, for legal malpractice

(Count I), breach of fiduciary duty (Count II), and negligent infliction of emotional distress

(Count III). (Compl. ¶¶ 34-48.)

Plaintiff was employed by Bath Iron Works ("BIW") from 1979 until his employment

was terminated in 2006. (Defs. Supp. S.M.F. ¶ 1; Pl. Opp. S.M.F. ¶ 1.) From 1985 or 1986 until

his termination, Plaintiff was represented by the Local S7, International Association of

Machinists and Aerospace Workers (the "Union"). (*Id.*) Plaintiff's employment was governed

by a Collective Bargaining Agreement (the "CBA") between BIW and the Union. (*Id.* ¶ 4.)

In April 2004, Plaintiff signed a two-year Last Chance Agreement (the "LCA") with

BIW. (*Id.* ¶ 5.) The LCA was the result of Plaintiff allegedly being observed leaving BIW's

facilities while on the clock, which constituted fraud under the CBA. (*Id.* ¶¶ 4-5.) Under the LCA, any further violations of the rules of conduct for BIW employees would result in Plaintiff's immediate discharge. (*Id.* ¶ 6.)

According to a 1997 memo promulgated by a BIW executive, BIW considered the unauthorized use of BIW telephones to constitute fraud. (*Id.* ¶ 7.) Previously, Plaintiff's 2001 performance evaluation stated that Plaintiff should spend less time socializing on the phone. (Pl. Opp. S.M.F. ¶ 8.) Plaintiff's 2003 performance evaluation also stated that Plaintiff should minimize personal calls during work hours. (*Id.*) In March 2004, Plaintiff was informed that his BIW phone was restricted to local calls. (Defs. Supp. S.M.F. ¶ 9; Pl. Opp. S.M.F. ¶ 9). Plaintiff was also reminded that BIW phones were for business use only. (*Id.*)

In 2006, Plaintiff's supervisor received complaints about Plaintiff's use of BIW phones. (*Id.* ¶ 13.) The Union shop steward was also of the opinion that Plaintiff spent an inordinate amount of time on the phone. (*Id.*) On June 27, 2006, Plaintiff attended a meeting with Union and BIW representatives. (*Id.* ¶ 14.) During the meeting, Plaintiff acknowledged making personal calls from work to his girlfriend's home, his girlfriend's cell phone, and a calling card. (*Id.* ¶ 15.) Plaintiff made 39 personal calls in March 2006 (6.3 hours, 5.6% of Plaintiff's work hours), 61 calls in April 2006 (10.75 hours, 8.7% of Plaintiff's work hours), 66 personal calls in May 2006 (10.95 hours, 7.7% of Plaintiff's work time), and 65 personal calls in June 2006 (5.39 hours, 4.2% of Plaintiff's work hours). (*Id.*) Twenty-four of those calls exceeded 10 minutes, five of those calls exceeded 25 minutes, and the longest call lasted 54 minutes. (*Id.*) Following the June 27, 2006 meeting, Plaintiff was suspended pending an investigation. (*Id.* ¶ 16.) On July 10, 2006, BIW terminated Plaintiff's employment for fraud. (*Id.*)

2

Following Plaintiff's termination, Union representatives met with Plaintiff, investigated the situation, and worked with Plaintiff to develop arguments for Plaintiff's grievance hearing. (*Id.* ¶ 17.) At the grievance hearing, the Union representative argued that Plaintiff's supervisor had authorized calls up to 45 minutes, that Plaintiff was able to work while on the phone, that other employees had engaged in similar conduct without similar consequences, and that Plaintiff's medical condition prompted his behavior. (*Id.* ¶ 18.) Plaintiff asserts that the Union representative was resistant to Plaintiff's argument that his medical condition prompted his behavior and that the Union representative failed to obtain evidence or present witnesses that Plaintiff had requested in order to support his arguments at the grievance hearing. (Pl. Opp. S.M.F. ¶¶ 17-18.) On August 18, 2006, BIW denied Plaintiff's grievance. (Defs. Supp. S.M.F. ¶ 19; Pl. Opp. S.M.F. ¶ 19.) The Union Grievance Committee voted unanimously not to arbitrate Plaintiff's grievance. (*Id.* ¶ 20.)

Plaintiff hired Defendant John R. Lemieux, Esq. of the Defendant law firm Desmond & Rand, P.A. to pursue claims against both BIW and the Union. (*Id.* ¶ 21.) In January 2007, Lemieux filed discrimination charges against both the Union and BIW on behalf of Plaintiff with the Maine Human Rights Commission (the "MHRC"), the National Labor Relations Board (the "NLRB"), and the Equal Employment Opportunity Commission (the "EEOC"). (*Id.* ¶¶ 26-28.) On February 27, 2007, Lemieux filed a complaint against BIW and the Union in the United States District Court for the District of Maine. (*Id.* ¶ 29.) On January 22, 2008, Lemieux filed a motion for leave to amend the complaint. (*Id.* ¶ 39.) Plaintiff's motion was granted on January 30, 2008. (*Id.* ¶ 40.) Lemieux did not actually file the amended complaint with the U.S. District Court until August 22, 2008. (*Id.* ¶ 71.)

3

The amended complaint asserted the following claims: violation of the duty to fair representation under the Labor Relations Act against the Union (Count I); breach of contract under the Labor Relations Act against BIW (Count II); employment discrimination under 42 U.S.C. § 2000e-2 against BIW (Count III); employment discrimination under 42 U.S.C. § 2000e-2 against the Union (Count IV); and employment discrimination under the Maine Human Rights Act ("MHRA") against BIW (Count V).[1] (Pl. Opp. S.M.F. ¶ 39A.)

On May 23, 2008, BIW filed a motion for summary judgment with the U.S. District Court. (Defs. Supp. S.M.F. ¶ 54; Pl. Opp. S.M.F. ¶ 54.) The Union also filed a motion for summary judgment on June 6, 2008. (Id.) Pursuant to Local Rule 56, each motion for summary judgment was accompanied by a statement of material facts in support of the motion for summary judgment. (Id. ¶ 55.) See D. Me. Local R. 56(b). The U.S. District Court extended the deadline for Lemieux to file Plaintiff's opposition to both motions to July 7, 2008. (Id. ¶ 56.)

On July 7, 2008, Lemieux filed the following with the U.S. District Court: (1) an opposition to BIW's motion for summary judgment, (2) an opposition to the Union's motion for summary judgment, (3) a statement of additional facts in support of Plaintiff's oppositions to both motions for summary judgment, and (4) an affidavit with supporting materials. (Id. ¶¶ 57-58.) On July 8, 2008, one day after the filing deadline, Lemieux filed an opposing statement of facts against the Union. (Id. ¶ 59.) Lemieux filed a motion for enlargement of time to file

---

[1] Both Defendants and Plaintiff assert that Count V of the underlying complaint for discrimination under the MHRA was only against BIW. (Defs. Supp. S.M.F. ¶ 39A; Pl. Opp. S.M.F. ¶ 39A.) However, in his recommended decision, the magistrate judge states that Count V of the underlying complaint asserted a claim for violation of the MHRA against both BIW and the Union. (Defs. Ex. C 32.)

[2] Defendants actually claim that Plaintiff filed his complaint on June 28, 2014, and that any claims for malpractice based on events that occurred prior to June 28, 2008, must be barred by the statute of limitations. (Defs. Mot. Summ. J. 10.) However, according to the complaint contained in the file, Plaintiff actually filed his complaint on June 27, 2014. (Compl. 1.)

[3] Specifically, Plaintiff asserts that Lemieux failed to properly plead discrimination in the initial complaint, failed to properly file the amended complaint, failed to sign the amended complaint, and failed

4

opposing statements of material facts against both the Union and BIW on August 8, 2008. (*Id.* ¶ 67.) *See* D. Me. Local R. 56(c).

On October 3, 2008, the U.S. District Court magistrate judge issued a report and recommended decision. (*Id.* ¶ 72.) In the recommended decision, the magistrate judge granted Lemieux's motion for enlargement of time to file opposing statements of material fact against the Union that were filed only one day late. (*Id.* ¶ 73.) The magistrate judge considered Plaintiff's opposing statement of facts against the Union in reaching his recommended decision. (*Id.*) The magistrate judge denied Lemieux's motion for enlargement of time to file opposing statements of material fact against BIW. (*Id.* ¶ 74.) Because BIW's statements of material fact were unopposed, the magistrate judge deemed BIW's statements of material fact admitted to the extent that they were properly supported. (*Id.*) *See* D. Me. Local R. 56(f). The magistrate judge's recommended decision granted summary judgment to BIW and the Union on all of Plaintiff's claims. (*Id.* ¶ 72.) Following a *de novo* review by a district judge, the magistrate judge's recommended decision was affirmed. (*Id.* ¶ 99.)

On June 27, 2014, Plaintiff filed this present complaint against Defendants Lemieux and Desmond & Rand, P.A., as *respondeat superior*, alleging legal malpractice, breach of fiduciary duty, and negligent infliction of emotional distress. (Compl. ¶¶ 34-48.) With regard to Plaintiff's malpractice claim, Plaintiff alleges that Lemieux breached the duty of care owed to Plaintiff by the following actions: (1) failing to timely respond to BIW's and the Union's statements of facts filed with their motions for summary judgment; (2) failing to properly cite to the summary judgment record in denying the Union's statements of material facts; (3) failing to obtain affidavits from key witnesses to support Plaintiff's opposition to BIW's and the Union's motions for summary judgment; and, (4) failing to conduct general discovery. (*Id.* ¶ 36.)

5

On August 5, 2015, Defendants moved for summary judgment on Plaintiff's claim of legal malpractice. (Defs. Mot. Summ. J. 1.) Following a motion to extend time, Plaintiff filed an opposition to Defendants' motion for summary judgment on September 16, 2015. (Pl. Opp'n to Defs. Mot. Summ. J. 1.) Following a motion to extend time, Defendants filed a reply to Plaintiff's opposition on September 30, 2015. (Defs. Reply to Pl. Opp'n to Defs. Mot. Summ. J. 1.)

## II. STANDARD OF REVIEW

Summary judgment is appropriate if, based on the parties' statements of material fact and the cited record, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c); *Dyer v. Dep't of Transp.*, 2008 ME 106, ¶ 14, 951 A.2d 821. "A material fact is one that can affect the outcome of the case. A genuine issue of material fact exists when the fact finder must choose between competing versions of the truth." *Dyer*, 2008 ME 106, ¶ 14, 951 A.2d 821 (internal citation and quotation marks omitted). When deciding a motion for summary judgment, the court reviews the evidence in the light most favorable to the non-moving party. *Id.*

If the moving party's motion for summary judgment is properly supported, the burden shifts to the non-moving party to respond with specific facts indicating a genuine issue for trial in order to avoid summary judgment. M.R. Civ. P. 56(e). When a defendant moves for summary judgment, the plaintiff must respond with evidence establishing a prima facie case for each element of their cause of action. *Watt v. UniFirst Corp.*, 2009 ME 47, ¶ 21, 969 A.2d 897 (internal citation and quotation marks omitted). The evidence proffered by the plaintiff "need not be persuasive at that stage, but the evidence must be sufficient to allow a fact-finder to make a factual determination without speculating." *Estate of Smith v. Cumberland Cnty.*, 2013 ME 13,

6

¶ 19, 60 A.3d 759. If a plaintiff fails to present sufficient evidence on the essential elements, then the defendant is entitled to a summary judgment. *Watt*, 2009 ME 47, ¶ 21, 969 A.2d 897.

If the party moving for summary judgment bears the burden of persuasion on the claim or defense, then the moving party must establish the existence of each element of the claim or defense without dispute as to any material fact in the record in order to obtain summary judgment. *Cach, LLC v. Kulas*, 2011 ME 70, ¶ 9, 21 A.3d 1015. The non-moving plaintiff must then respond with specific facts indicating a genuine issue for trial in order to avoid summary judgment. M.R. Civ. P. 56(e).

## III.  ANALYSIS

Defendants assert they are entitled to summary judgment on two grounds. First, Defendants argue that any new claims based on the underlying complaint, the amended complaint, or prior administrative actions and Plaintiff's claim that Lemieux failed to conduct general discovery are barred by the statute of limitations on legal malpractice claims. (Defs. Mot. Summ. J. 10-14.) Second, Defendants argue that there is no evidence of causation between Lemieux's alleged malpractice and Plaintiff's alleged injury or loss. (*Id.* at 14-20.)

A.  Statute of Limitations

Under Maine law, all civil actions must be commenced within six years after the cause of action accrues. 14 M.R.S. § 752 (2014). A cause of action against an attorney for malpractice accrues on the date that act or omission giving rise to the cause of action occurred, not on the date the malpractice is discovered. 14 M.R.S. § 753-B (2014). Statutes of limitations are an affirmative defense that must be asserted in a responsive pleading in order to be preserved. M.R. Civ. P. 8(c); *Schindler v. Nilsen*, 2001 ME 58, ¶ 17 n.7, 770 A.2d 638. According to Defendants, because Plaintiff filed this malpractice action on June 27, 2014, any claims of malpractice based

7

on acts or omissions that occurred prior to June 27, 2008, are barred by the six-year statute of limitations.[2] (Defs. Mot. Summ. J. 10.) Because Defendants bear the burden on any affirmative defenses, Defendants must prove the existence of each element of the their statute of limitations defense without dispute as to any material fact in the record. *Kulas*, 2011 ME 70, ¶ 9, 21 A.3d 1015.

> 1.    *Additional claims of malpractice based on prior administrative actions, the complaint, and failure to timely file amended complaint.*

Specifically, Defendants assert that any malpractice claims based on what claims or arguments Lemieux should have presented to the MHRC is time-barred. (Defs. Mot. Summ. J. 12.) According to Defendants, the complaint to the MHRC was filed on January 5, 2007. (Defs. Supp. S.M.F. ¶ 26.) Thus, any claims of malpractice based on Lemieux's handling of the MHRC complaint were barred as of January 5, 2013. Similarly, Defendants also assert that claims based on Lemieux's handling of Plaintiff's administrative actions before the EEOC and NLRB accrued more than six years before the filing of the complaint and are, therefore, also barred by the statute of limitations. (Defs. Mot. Summ. J. 13; Defs. Supp. S.M.F. ¶¶ 27-28.)

Defendants also assert that any claims based on Lemieux's handling of the underlying complaint or the amended complaint are also barred by the statute of limitations. (Defs. Mot. Summ. J. 13.) According to Defendants, Lemieux filed the underlying complaint on February 27, 2007, and a motion for leave to amend the complaint on January 22, 2008. (Defs. Supp. S.M.F. ¶¶ 29, 39.) Leave was granted on January 30, 2008. (*Id.* ¶ 40.) Lemieux did not properly file the amended complaint until August 22, 2008. (*Id.* ¶ 71.) Therefore, according to Defendants, any malpractice claims based on Lemieux's handling of the underlying complaint or

---

[2] Defendants actually claim that Plaintiff filed his complaint on June 28, 2014, and that any claims for malpractice based on events that occurred prior to June 28, 2008, must be barred by the statute of limitations. (Defs. Mot. Summ. J. 10.) However, according to the complaint contained in the file, Plaintiff actually filed his complaint on June 27, 2014. (Compl. 1.)

8

his failure to timely file the amended complaint expired prior to the filing of this present action for malpractice. (Defs. Mot. Summ. J. 13.)

Contrary to Defendants assertions, Plaintiff has not asserted any malpractice claims based on Lemieux's handling of the prior administrative actions, the underlying complaint, or the amended complaint. In his opposition, Plaintiff states that his malpractice complaint is based on Lemieux's alleged failure to timely file opposing statements of material fact and to properly cite to the record in the memorandum, statement of material fact, and opposing statement of material fact filed in opposition to summary judgment in the underlying case. (Pl. Opp'n to Defs. Mot. Summ. J. 11.) All of those acts occurred after June 27, 2008, and would not be barred by the statute of limitations. Plaintiff also avers that any assertions of fact about Lemieux's handling of the underlying complaint, the amended complaint, and other events prior to June 27, 2008, are simply evidence that support his claims of malpractice.[3] (Id. at 10.) Therefore, because Plaintiff's malpractice claims are not based on Lemieux's handling of the prior administrative actions, the underlying complaint, or the amended complaint prior to June 27, 2008, the court need not even address the statute of limitations with regard to these issues.

---

[3] Specifically, Plaintiff asserts that Lemieux failed to properly plead discrimination in the initial complaint, failed to properly file the amended complaint, failed to sign the amended complaint, and failed to properly respond to his failure to file the amended complaint. (Pl. Add'l S.M.F. ¶¶ 142, 144-48.) Plaintiff argues that these facts are not the basis for additional malpractice claims, but are evidence of a pattern of negligence by Lemieux that supports Plaintiff's malpractice claims. (Pl. Opp'n to Defs. Mot. Summ. J. 10.) Though the admissibility of this evidence is not at issue on summary judgment, any facts that show Lemieux was negligent in drafting the underlying complaint or filing the amended complaint are not evidence relevant to Plaintiff's claims of malpractice and are inadmissible. Although prior instances of negligence may be circumstantially relevant to proving notice, causation, or recurring conditions, prior instances of negligence are not relevant to show that a defendant acted negligently on a particular occasion. *Moody v. Haymarket Assocs.*, 1999 ME 17, ¶ 6, 723 A.2d 874. Thus, Plaintiff's assertions of fact that Lemieux was negligent with regard to the underlying complaint and amended complaint are not admissible evidence to prove Lemieux was negligent in responding to the summary judgment motions in the underlying case.

2. *Plaintiff's malpractice claim based on Lemieux's failure to conduct discovery*

Defendants also assert that Plaintiff's claim that Lemieux committed malpractice by failing to conduct general discovery is barred by the statute of limitations. (Defs. Mot. Summ. J. 13.) There is no dispute that discovery deadline in the underlying action was May 2, 2008. (Defs. Supp. S.M.F. ¶ 45; Pl. Opp. S.M.F. ¶ 45.) There is also no dispute that additional depositions were taken on May 7 and 8, 2008. (*Id.* ¶¶ 51-53.) Therefore, based on the summary judgment record, discovery in the underlying action was completed by May 8, 2008. Thus, under the applicable statute of limitations, any claims alleging Lemieux failed to conduct certain discovery expired on May 8, 2014. *See* 14 M.R.S. §§ 752, 753-B(1). However, Defendants have failed to preserve any statute of limitations defense. Defendants did not assert the statute of limitations as an affirmative defense in their answer. (Ans. 7-8.) Although Defendants reserved the right to amend their pleading to raise additional defenses that become available through discovery, Defendants have not sought leave to amend their answer. (Ans. 9, ¶ 11;) *see* M.R. Civ. P. 15(a). Thus, Defendants have not preserved their statute of limitations defense. *See Schindler*, 2001 ME 58, ¶ 17 n.7, 770 A.2d 638.

B. Lack of Evidence of Causation

1. *Whether the "failure to plead" standard applies to Plaintiff's claims.*

As a threshold matter, the parties dispute which standard of legal malpractice applies to Plaintiff's claims. Generally, to assert a claim for legal malpractice, the plaintiff must prove (1) that the defendant attorney breached a duty to conform to a certain standard of conduct owed to the plaintiff; and (2) that the defendant's breach of duty proximately caused the plaintiff's injury or loss. *Niehoff v. Shankman & Assocs. Legal Ctr., P.A.*, 2000 ME 214, ¶ 7, 763 A.2d 121. Additionally, Plaintiff must also prove (3) that the plaintiff would have achieved a more

10

favorable result but for the defendant's breach of duty. *Id.* ¶ 9; *Garland v. Roy*, 2009 ME 86, ¶¶ 19-20, 976 A.2d 940. This malpractice standard applies to claims based on the defendant attorney's advice or tactics that preceded the final resolution of the underlying action on the merits. *Niehoff*, 2000 ME 214, ¶ 9, 763 A.2d 121.

However, Plaintiff asserts that the "failure to plead" standard should apply in this case. (Pl. Opp'n to Defs. Mot. Summ. J. 7-8, 14.) When a plaintiff asserts that the defendant attorney failed to plead or develop a particular claim, proving that, but for the attorney's error, the plaintiff would have achieved a more favorable result is problematic and requires speculation. *Niehoff*, 2000 ME 214, ¶ 9, 763 A.2d 121. Therefore, in a "failure to plead" legal malpractice action, the plaintiff need only prove that (1) the defendant attorney was negligent in representing the plaintiff; and (2) the attorney's negligence caused the plaintiff to lose an opportunity to achieve a favorable result that (a) the law allows and (b) the facts generated by the plaintiff would support if accepted by the fact finder. *Id.* ¶ 10.

Contrary to his assertion, Plaintiff's complaint does not assert that he was deprived of an opportunity to present a particular claim to a fact finder by Lemieux's failure to plead or pursue a particular cause of action. Plaintiff's complaint alleges that Lemieux failed to respond to BIW's statement of material fact in support of summary judgment; failed to properly cite the record when opposing the Union's statements of material fact; failed to obtain affidavits to support Plaintiff's opposition to BIW's and the Union's motions; and failed to conduct discovery. (Compl. ¶¶ 12-33, 36.) All of these alleged failures are acts that preceded the final resolution of the underlying case on summary judgment. Plaintiff's complaint does not present claims based on a "failure to plead." Therefore, the general legal malpractice standard applies to this action.

11

## 2. *Proximate Causation*

To assert a claim for legal malpractice, the plaintiff must demonstrate (1) that the defendant attorney breached a duty to conform to a certain standard of conduct owed to the plaintiff; and (2) that the defendant's breach of duty proximately caused the plaintiff's injury or loss. A plaintiff in a legal malpractice action must demonstrate that the plaintiff would have achieved a more favorable result but for the defendant's breach of duty. *Garland*, 2009 ME 86, ¶¶ 19-20, 976 A.2d 940; *Niehoff*, 2000 ME 214, ¶¶ 7, 9, 763 A.2d 121.

Regarding the first element, expert testimony is usually required to establish the appropriate standard of care and whether the defendant attorney breached that standard of care, unless the breach or lack thereof is "so obvious" that it can be determined by the court as a matter of law or is within the ordinary knowledge of a layperson. *Kurtz & Perry, P.A. v. Emerson*, 2010 ME 107, ¶ 26, 8 A.3d 677. In their motion for summary judgment, however, Defendants do not address Plaintiff's assertion that Lemieux breached a duty of care owed to the Plaintiff. (Defs. Mot. Summ. J. 14-20.) Therefore, for the purpose of summary judgment, the court presumes from the absence of any argument to the contrary that Plaintiff has established this element.

Defendants' motion for summary judgment focuses on causation, arguing that Plaintiff cannot establish that Lemieux's alleged failures proximately caused him harm insofar as he would have achieved a more favorable result. Proximate cause exists where the evidence, and any reasonable inferences drawn from the evidence, demonstrate that the attorney's negligence played a substantial part in bringing about or actually caused the plaintiff's injury or damages and that the injury or damage was either a direct result or a reasonably foreseeable consequence of the attorney's negligence. *Niehoff*, 2000 ME 214, ¶ 8, 763 A.2d 121. The mere possibility of

12

proximate causation is insufficient. *Id.* If the plaintiff's assertions of causation rest on speculation or conjecture, then the defendant is entitled to judgment as a matter of law. *Id.*

Plaintiff contends that Lemieux committed malpractice by failing to timely file opposing statements of fact in response to BIW's and the Union's statements of facts, failing to properly respond or cite to the summary judgment record when denying the Union's statements of material facts, failing to obtain affidavits from key witnesses to support Plaintiff's opposition to BIW's and the Union's motions for summary judgment, and failing to conduct general discovery. (Compl. ¶ 36.) Each of Plaintiff's claims is addressed in turn.

> 3. *Lemieux's failure to timely respond to BIW's and the Union's statements of facts.*

Plaintiff does not present any facts that demonstrate that Lemieux's failure to timely file opposing statements of fact against either the Union's or BIW's statement of facts proximately caused Plaintiff's loss. First, it is undisputed that the magistrate judge admitted and considered Plaintiff's opposing statement of facts against the Union despite Lemieux filing the opposing statement of facts one day late. (Defs. Supp. S.M.F. ¶ 73; Pl. Opp. S.M.F. ¶ 73.) Thus, Lemieux's failure to timely file the opposing statement of material facts against the Union did not cause the magistrate judge to rule for the Union on Plaintiff's claim for violation of duty (Count I of the underlying complaint). Additionally, the magistrate judge ruled that Plaintiff was required to prove his violation of duty claim against the Union as prerequisite in order to recovering on his federal and state discrimination claims against the Union (Counts IV and V of the underlying complaint). (Defs. Supp. S.M.F. ¶ 94, Ex. C at 35-36.) Therefore, Lemieux's failure to timely file the opposing statement of facts against the Union did not cause Plaintiff's discrimination claims against the Union to fail.

13

Second, regarding Plaintiff's claim against BIW for breach of contract (Count II of the underlying complaint), the magistrate did not enlarge the time for Lemieux to file an opposing statement of facts against BIW, and BIW's statements of material fact were deemed admitted. (Defs. Supp. S.M.F. ¶ 74; Pl. Opp. S.M.F. ¶ 74.) However, it is undisputed that Counts I and II of the underlying complaint were hybrid claims, and to recover from either the Union or BIW, Plaintiff was required to prove both claims. (*Id.* ¶¶ 77-78.) In his recommended decision, the magistrate judge first addressed Count I against the Union, for which the magistrate judge had a complete summary judgment record, and ruled in favor of the Union. (*Id.* ¶¶ 73, 79, 93.) Because Plaintiff's claim against the Union failed, the magistrate judge ruled that Plaintiff's claims against BIW for breach of contract must also fail. (*Id.* ¶ 93.) Thus, the magistrate judge's determination that the breach of contract claim against BIW failed was largely based on the Union's statements of fact, against which Lemieux had filed an opposing statement of facts. The magistrate judge's determination that Plaintiff's claim against BIW failed was not the direct result of Lemieux's failure to file an opposing statement of facts against BIW and the fact that BIW's statements of fact were all deemed admitted. Therefore, Lemieux's failure to file an opposing statement of fact against BIW did not proximately caused Plaintiff's claim against BIW to fail.

Third, regarding Plaintiff's federal discrimination claim against BIW (Count III of the underlying complaint), the magistrate judge found that Plaintiff failed to present evidence of a temporal proximity between Plaintiff's disability and his termination, a necessary element of his claim. (Defs. Supp. S.M.F. ¶ 94.) The magistrate judge noted that, even though Plaintiff's opposing statements of fact against BIW was not admitted, its admission would not have altered the magistrate judge's decision, because Plaintiff's opposing statements of material fact were not

14

responsive BIW's assertions. (Defs. Supp. S.M.F. ¶ 95.) Additionally, the magistrate held that Plaintiff's MHRA claim against BIW (Count V) failed for the same reason: no evidence of temporal proximity. (*Id.* ¶ 94, Ex. C. 36.) Therefore, because the excluded opposing statement of facts against BIW would not have altered the magistrate judge's findings, there is no evidence that Lemieux's failure to file the opposing statement of facts against BIW proximately caused Plaintiff's federal and state discrimination claims against BIW to fail.

Though Plaintiff generally denies some of the facts asserted by Defendants, Plaintiff has not provided any facts of its own, supported by record citations no less, showing there is a genuine issue of fact regarding proximate cause on this issue. (*See* Pl. Opp. S.M.F. ¶¶ 94-95.) Therefore, there is no evidence that Lemieux's failure to timely file opposing statements of fact against both the Union and BIW proximately caused summary judgment to be entered against Plaintiff in favor of the Union and BIW.

4.     *Lemieux's failure to properly cite to the summary judgment record in denying the Union's statements of material facts*

As previously discussed, the magistrate did consider Plaintiff's opposing statements of fact against the Union that were filed one day late. (Defs. Supp. S.M.F. ¶ 73; Pl. Opp. S.M.F. ¶ 73.) In his recommendation, the magistrate judge first addressed Plaintiff's violation of duty claim against the Union (Count I). (*Id.* ¶ 79.) The magistrate judge identified fifteen specific violations of duty alleged by Plaintiff and considered each in turn. (*Id.*) The magistrate judge found that there was no evidence to support any of Plaintiff's fifteen allegations against the Union and entered summary judgment against the Plaintiff on Count I. (Defs. Supp. S.M.F. ¶¶ 81-92.) Further, because Plaintiff was required to prove his violation of duty claim against the Union in order to recovering on his federal and state discrimination claims against the Union

15

(Counts IV and V), the magistrate judge also entered summary judgment against Plaintiff on those claims as well. (Defs. Supp. S.M.F. ¶ 94, Ex. C 35-36.)

In his opposition to summary judgment, Plaintiff argues that the magistrate judge's entry of summary judgment for the Union was proximately caused by Lemieux's failure to properly deny the Union's statements of fact in Plaintiff's opposing statement of fact and his failure to give a proper citation to evidence in the summary judgment record to support Plaintiff's opposing statements of fact. (Pl. Opp'n Defs. Mot. Summ. J. 12.) Plaintiff identified thirty-three opposing statements of fact for which Lemieux failed to supply a proper citation. (Pl. Add'l S.M.F. ¶ 154; Defs. Resp. S.M.F. ¶ 154.) Lemieux also failed to provide a citation for thirteen statements of fact in Plaintiff's own statements of fact filed in response to the motions for summary judgment. (*Id.* ¶ 155.) In his recommended decision, the magistrate judge specifically identified eleven different statements of fact for which Lemieux failed to properly deny an assertion by the Union, failed to properly respond to the Union's assertion of fact, or failed to provide a supporting citation. (Pl. Opp'n Defs. Mot. Summ. J. 12.) For all eleven statements of fact, the magistrate judge deemed the opposing party's statement of fact to be admitted. (*Id.*) The magistrate judge relied on each of those admitted facts in his analysis. *See* (Defs. Ex. C 9-17.)

Because eleven of the Union's statements of fact were deemed admitted as a result of Lemieux's failure to properly respond or provide citation, Plaintiff argues that there is a genuine issue of fact regarding whether Lemieux's failure proximately caused the entry of summary judgment for the Union. (Pl. Opp'n Defs. Mot. Summ. J. 12-13.) In his statement of facts in support of his opposition to summary judgment, Plaintiff largely cites to the magistrate judge's recommended decision noting that Lemieux had failed to provide a proper response or citation.

16

(Pl. Addt'l S.M.F. ¶¶ 161-164, 166-72.) Notably, Plaintiff fails to provide any citation to evidence demonstrating what portions of the summary judgment record to which Lemieux should have properly cited in order to create an issue of disputed fact among any, much less all, of the eleven statements of fact advanced by the Union and relied upon by the magistrate judge. *Id.*

Plaintiff refers to a freshly sworn affidavit by its expert witness, Julie Moore, Esq., in which Moore states that it is more likely than not that, had Lemieux properly responded to the Union's statements of fact with appropriate citations that, *ipso facto,* Plaintiff would have survived summary judgment. (*Id.* ¶ 181, Pl. Ex. HH 1.) However, Moore's affidavit does not state which facts in the summary judgment record, if any existed, that Lemieux should have relied upon to deny the Union's statements of material fact. (Pl. Ex. HH 1., 17.) Further, Moore specifically states that her expert opinion does not address Plaintiff's violation of duty to fair representation claim against the Union. (*Id.* at 2 n.2.)

Without evidence of what Lemieux should have stated or cited in the opposing statement of facts and summary judgment record, the court cannot determine, without resorting to speculation, whether Lemieux's alleged failures substantially contributed to or directly resulted in the magistrate judge's entry of summary judgment for the Union. It is tautological of Plaintiff, without more, simply to proclaim that had Lemieux properly opposed the Union's statements of material fact that Plaintiff would have survived summary judgment. This declaration begs the question but does not answer it. Without the benefit of any reference to the underlying summary judgment record to which Lemieux should have directed the magistrate judge, the court is left with the barest speculation as to whether Lemieux's failure proximately caused the Plaintiff's loss. This defect is not cured simply through Moore's affidavit, which similarly lacks any

17

reference to the underlying summary judgment record, which could have supported a successful opposition statement of material facts. Although the court must examine the evidence in the summary judgment record in the light most favorable to the non-moving party, that does not sanction the court with the authority to imagine evidence that has not been identified or even suggested from the summary judgment record by the non-moving party. The limiting principle of the foregoing rule of interpretation must at a minimum require affirmative citation to the summary judgment record in the first instance. That is not the case here. Plaintiff has failed to present evidence that Lemieux's failure to properly oppose the Union's statement of facts or cite to the summary judgment record proximately caused Plaintiff's loss.

### 5. *Lemieux's failure to obtain affidavits from key witnesses*

Plaintiff has provided no evidence of proximate causation between Lemieux's failure to obtain affidavits to support Plaintiff's opposition to the motions for summary judgment and the magistrate judge's entry of summary judgment against Plaintiff. In their motion for summary judgment, Defendants do not specifically address Plaintiff's claim that Lemieux failed to obtain affidavits. (Defs. Mot. Summ. J. 14-20.) However, when opposing summary judgment, it is the non-moving party's burden to respond to a motion for summary judgment with specific facts establishing a prima facie case for each element of a claim and indicating a genuine issue for trial in order to avoid summary judgment. M.R. Civ. P. 56(e); *Watt*, 2009 ME 47, ¶ 21, 969 A.2d 897.

Plaintiff has not cited a single fact regarding what affidavits Lemieux should have obtained and what facts those affidavits would have included. Neither Plaintiff's opposition to summary judgment, his opposing statement of facts, nor his statement of additional facts present

18

a single argument or fact regarding what affidavits Lemieux should have obtained. (Pl. Opp'n to Defs. Mot. Summ. J. 15-23; Pl. Opp. S.M.F. ¶¶ 1-132; Pl. Addt'l S.M.F. ¶¶ 138-182.)

Therefore, the court cannot conclude, without resorting to speculation, that Lemieux's failure to obtain affidavits substantially contributed to or directly resulted in the magistrate judge's entry of summary judgment for BIW and the Union. Thus, there is no evidence of proximate causation between Lemieux's failure to obtain affidavits and Plaintiff's losses.

### 6. *Lemieux's failure to conduct general discovery*

As discussed above, Plaintiff's malpractice claim based on Lemieux's handling of discovery would be barred by the statute of limitations if Defendants had properly preserved that defense. However, there is also no evidence Lemieux's failure to conduct general discovery proximately caused the magistrate judge to enter summary judgment against Plaintiff. There is no dispute that, in response to Lemieux's request for production of documents, BIW provided Lemieux with 3,504 pages of documents. (Defs. Supp. S.M.F. ¶ 42; Pl. Opp. S.M.F. ¶ 42.) There is no dispute that, in response to Lemieux's request for product of documents, the Union provided Lemieux with 1,437 pages of documents. (*Id.* ¶ 44.) There is also no dispute that Lemieux took depositions from six key witnesses in Plaintiff's case against BIW and the Union. (*Id.* ¶¶ 46-51.) Neither Plaintiff's opposition to summary judgment, Plaintiff's opposing statement of material facts, nor Plaintiff's statement of additional facts present any arguments or facts regarding what additional discovery Lemieux failed to conduct or what that discovery would have revealed. (Pl. Opp'n to Defs. Mot. Summ. J. 15-23; Pl. Opp. S.M.F. ¶¶ 1-132; Pl. Add'l S.M.F. ¶¶ 138-182.)

Because Plaintiff has not cited a single fact regarding what additional discovery Lemieux should have obtained and what that discovery would have revealed, the court cannot conclude,

19

without resorting to speculation, that Lemieux's failure to conduct discovery substantially contributed to or directly resulted in the magistrate judge's entry of summary judgment for BIW and the Union. Thus, there is no evidence of proximate causation between Lemieux's alleged failure to conduct discovery and Plaintiff's losses.

### 7.   *Lack of evidence that, but for Lemieux's alleged malpractice, Plaintiff would have achieved a more favorable result*

Lastly, in order to demonstrate that he or she would have achieved a more favorable result but for the defendant attorney's breach of duty, the plaintiff must provide expert testimony that the plaintiff would have prevailed on the underlying claims if not for the defendant's negligence. *Corey v. Norman, Hanson & DeTroy*, 1999 ME 196, ¶¶ 13-14, 742 A.2d 933.

First, because Plaintiff incorrectly asserts the "failure to plead" malpractice standard applied in this action, Plaintiff's opposition to the motion for summary judgment does not even address whether Plaintiff would have ultimately prevailed on the underlying claims. (Pl. Opp'n to Defs. Mot. Summ. J. 7-16.)

Second, even if Plaintiff's opposition to summary judgment had properly addressed the issue, there is no evidence in the record upon which the court could conclude that, but for Lemieux's failures, Plaintiff would have ultimately prevailed. In their motion for summary judgment, Defendants argue that Plaintiff's expert, Moore, explicitly did not offer an opinion on whether Plaintiff would have prevailed on underlying claims but for Lemieux's alleged failures. (Defs. Mot. Summary J. 20.) Moore also testified at her deposition that she would not opine on whether a jury would ultimately believe Plaintiff's discrimination claims against BIW and the

Union. (Pl. Opp. S.M.F. ¶ 131, Ex. Y 108-09.)[4] Moore's expert report echoed her deposition testimony, stating that her report only addressed whether Plaintiff discrimination claims could have survived summary judgment, but provides no factual predicate from the underlying summary judgment record upon which such an opinion could be based. (Def. Ex. HH 1.) Additionally, as previously discussed, Moore's expert opinion did not even address the breach of contract claim against BIW or the violation of duty claim against the Union. (Def. Ex. HH 2 n.2.) Only in her recent affidavit does Moore, for the first time, assert that it is her opinion that, but for Lemieux's alleged failures, Plaintiff would have likely prevailed on his discrimination claims. (Pl. Add'l S.M.F. ¶ 181, Pl Ex. HH 1.) However, Moore's affidavit does not state which facts or evidence form the basis for this conclusion. (*Id.*)

The Law Court has stated, "a witness who has given clear answers to unambiguous questions cannot later create a conflict and resist summary judgment by contradicting his prior testimony without a legitimate explanation as to why he changed his testimony." *Garland*, 2009 ME 86, ¶ 18 n.4, 976 A.2d 940. Because Moore unambiguously stated at her deposition that she would not give an expert opinion on whether a jury would ultimately believe Plaintiff's discrimination claims, Plaintiff cannot now create a genuine issue of fact by submitting an affidavit by Moore giving a contradictory opinion that Plaintiff would have ultimately prevailed on his discrimination claims. Thus, Moore's affidavit is insufficient to create a genuine issue of fact. Therefore, Plaintiff has failed to provide sufficient expert testimony regarding whether

---

[4] Defendants Statement of material fact ¶ 131 asserts Moore testified at her deposition that she would not opine on whether Plaintiff would have ultimately prevailed on his discrimination claims. (Defs. S.M.F. ¶ 131.) To support statement of material fact ¶ 131, Defendants cite to page 105 of Moore's deposition, lines 3-15. (*Id.*) First, Defendants failed provided with page 105 of Moore's deposition in support of its statement of fact. (Defs. Ex. II.) Therefore, Defendants failed to provide the court with evidence to support its statement of fact. Second, the testimony cited by Defendants does not appear on page 105 of Moore's deposition. Plaintiff has provided the court with a complete transcript of Moore's deposition and citation to the correct passage. (Pl. Opp. S.M.F. ¶ 131.) The testimony cited by Defendant actually appears on page 108, lines 17-24, and page 109, lines 1-5. (Pl. Ex. Y 108-09.)

Plaintiff would have ultimately prevailed on his underlying claims against BIW and the Union if Lemieux had not committed the alleged malpractice.

Therefore, based on the foregoing, there is no evidence in the record showing a genuine issue of fact regarding either proximate causation or that, but for Lemieux's alleged malpractice, Plaintiff would have prevailed on his claims against BIW and the Union. Therefore, Defendants are entitled to summary judgment on Plaintiff's legal malpractice claims.

C.    Plaintiff's Remaining Claims for Breach of Fiduciary Duty and Negligent Infliction of Emotional Distress

Defendants' motion for summary judgment addresses only Plaintiff's claim for legal malpractice against Defendants (Count I). (Defs. Mot. Summ. J. 8-10.) Defendants do not address Counts II and III of Plaintiff's complaint for breach of fiduciary duty and negligent infliction of emotional distress. (Compl. 6-8.) However, in legal malpractice actions "[t]he same rules of causation generally apply whether the cause of action sounds in contract, negligence, or breach of fiduciary duty." *Niehoff*, 2000 ME 214, ¶ 8, 763 A.2d 121 (internal citation and quotation marks omitted.) Therefore, because Plaintiff has failed to establish a genuine issue of fact regarding proximate causation for his legal malpractice claims, Plaintiff's claims for breach of fiduciary duty and negligent infliction of emotional distress also fail for lack of proximate cause. Therefore, the court shall also grant summary judgment for Defendants on Count II and Count III.

## IV.    CONCLUSION

Based on the foregoing, Defendants John R. Lemieux, Esq., and Desmond & Rand, P.A.'s motion for summary judgment on Plaintiff Thomas M. Brooks's claims for legal malpractice is granted. The Court also grants summary judgment for Defendants on Plaintiff's claims for breach of fiduciary duty and negligent infliction of emotional distress.

22

The Clerk is directed to enter this Order on the civil docket by reference pursuant to Maine Rule of Civil Procedure 79(a).

Date: 2/4/16

Lance E. Walker
Justice, Superior Court